IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

LARRAINE CARPENTER and AMBER CARPENTER            PLAINTIFFS

v.                    Case No. 05-6026

RELIANCE STANDARD LIFE INSURANCE COMPANY,
SANDRA CARPENTER, LINDA CARPENTER, and
RITA BOYCE                                            DEFENDANTS

## **MEMORANDUM OPINION AND ORDER**

The Plaintiffs bring this action against the Defendants seeking the imposition of a constructive trust on proceeds from an insurance policy. Separate Defendant Reliance Standard Life Insurance Company ("Reliance") has filed a Motion for Summary Judgement (Doc. 22), which is unopposed by all parties (Docs. 30 and 32). Separate Defendants Sandra Carpenter, Linda Carpenter, and Rita Boyce ("Remaining Defendants") filed a Motion for Summary Judgement (Doc. 17), contending that Plaintiffs have no interest in the disputed proceeds, to which Plaintiffs filed a Response (Doc. 31). Plaintiffs filed a Motion for Summary Judgment (Doc. 25) contending that they have an equitable interest in the disputed proceeds created by a divorce decree and the incorporated property settlement agreement, to which Remaining Defendants responded (Doc. 32).

**I. BACKGROUND**

Except as noted, the following facts are not disputed. Plaintiff Larraine Carpenter ("Larraine") and Alton Ray Carpenter ("the Decedent") were married on November 30, 1973 and divorced in November 2000. The Property Settlement Agreement ("Agreement") was

incorporated into the divorce decree. The Agreement contained a provision that the Decedent was to "leave the Wife and the minor child as sole beneficiaries on the Husband's life and accidental insurance as long as the Husband is employed by I.S.G. Resources, Inc." (Doc. 28.)

In September 2002, Headwaters, Inc. purchased I.S.G. Resources, Inc. as a wholly owned subsidiary. According to Headwaters, Inc., the Decedent continued to be employed by I.S.G Resources, Inc. until his death (October 17, 2004). Starting on July 26, 2004, the Decedent became disabled and collected disability benefits from I.S.G. Resources, Inc. (Exhibit "A", Doc. 26.)

Sometime in 2003, the Decedent changed the beneficiaries of the life and accidental insurance policy (provided through his employer, I.S.G. Resources, Inc.) from the Plaintiffs to his daughters from a previous marriage, Remaining Defendants.

After the present lawsuit was initiated, Separate Defendant Reliance filed a motion to deposit the benefits under the Decedent's life insurance policy into the Registry of this Court (Doc. 7), which was granted (Doc. 10). Reliance has deposited $50,819.09($48,750 (the original benefit under the life insurance policy) plus interest) into the Registry of the Court.

## II. DISCUSSION

In determining whether summary judgment is appropriate, the facts and inferences from the facts are viewed in the light most favorable

to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l. Bank of Commerce of El Dorado, Arkansas v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). If the plaintiffs fails to make a showing sufficient to establish the existence of an element essential to their case and on which they will bear the burden of proof at trial, then the defendants are entitled to judgment as a matter of law and all other facts are rendered immaterial. *See Thelma D. By Delores A. v. Bd. of Educ.*, 934 F.2d 929, 932 (8th Cir. 1991).

### **A. Separate Defendant Reliance Standard Life Insurance Co.**

Before the Court is Separate Defendant Reliance's Motion for Summary Judgement (Doc. 22) and the Responses stating no opposition by both Plaintiffs (Doc. 30) and Remaining Defendants (Doc. 32). Reliance states in its supporting brief (Doc. 23)that once the disputed proceeds from the Decedent's life insurance was deposited into this Court's Registry, there is no dispute between it and Plaintiffs. The parties agree with this contention and have no objection to the motion for summary judgement. The motion is GRANTED and Separate Defendant Reliance is DISMISSED WITH PREJUDICE from this action.

3

**B. Separate Defendants Sandra Carpenter, Linda Carpenter, and Rita Boyce**

Arkansas law generally applies contract rules to questions relating to the construction of separation agreements between spouses. *Ray v. Ray*, 61 F.3d 662, 664 (8th Cir. 1995) (citing *Sutton v. Sutton*, 771 S.W.2d 791, 792 (Ark. 1989)). A court must "give to the language employed by the parties the meaning the parties intended." *Ray*, 61 F.3d at 664 (citing *Conley Transp., Inc. v. Great American Ins. Co.*, 849 S.W.2d 494 (Ark. 1993)). Absent some showing that the parties intended to give some specialized meaning to the words in the contract, the court must give the words their "plain, ordinary meaning." *Ray*, 61 F.3d at 664 (citing *N.R.L.B. v. Superior Forwarding, Inc.*, 762 F.2d 695 (8th Cir. 1985)).

Under Arkansas law, a court must "construe the contract according to its unambiguous language without enlarging or extending its terms." *Ray*, 61 F.3d at 664 (citing *North v. Philliber*, 602 S.W.2d 643 (Ark. 1980); *Christmas v. Raley*, 539 S.W.2d 405 (Ark. 1976)). In addition to looking at the contested words, the contract as a whole should be reviewed and the "parts should be construed in a fashion which gives consistent meaning to each of its parts." *Ray*, 61 F.3d at 664 (citing *In Re Workers' Compensation Ins. Antitrust Lit.*, 867 F.2d 1552, 1567, n27 (8th Cir. 1989)). Furthermore, a court must construe the language against the party responsible for drafting the instrument. *Ray*, 61 F.3d at 664 (citing *Bradley v. Arkansas Louisiana Gas Co.*, 659 S.W.2d 180 (Ark. 1983); *Gilstrap v. Jackson*, 601 S.W.2d 270 (Ark. App.

4

1980)).

"[A]s a general rule, a beneficiary does not have a vested interest in the insurance proceeds where the policy authorizes the insured to change the beneficiary. . . ." *Orsini v. Commercial National Bank*, 639 S.W.2d 516, 517(Ark. App. 1982). However, when the language in a property settlement agreement that has been incorporated into a divorce decree is specific enough for a court to find that an insurance policy was intended to be maintained for a specific beneficiary, an equitable interest in the insurance policy exists. *See Orsini*, 632 S.W.2d 516. The named beneficiary for the insurance proceeds does not have to have committed any wrongful act for a constructive trust be imposed on the proceeds, as "[i]nnocent parties may frequently be unjustly enriched." *Id.* at 518 (citing *Gutierrez v. Madero*, 564 S.W.2d 185 (Tex. Civ. App. 1978).

In the case *sub judice*, the parties have differing interpretations for the words contained in the "Life Insurance" paragraph of the Property Settlement Agreement ("Agreement"):

"7. <u>LIFE INSURANCE</u>: The parties agree that the Husband will leave the Wife and the minor child as sole beneficiaries on the Husband's life and accidental insurance as long as the Husband is employed by I.S.G. Resources, Inc." (Doc. 28.)

Remaining Defendants advance several theories upon which they conclude that the Decedent's obligation to list Plaintiffs as beneficiaries on his life and accidental insurance policy terminated.

5

They contend that the paragraph at issue terminated upon Plaintiff Amber Carpenter ("Amber") reaching the age of majority; when I.S.G. Resources, Inc. was purchased by Headwaters, Inc.; and/or when the Decedent began receiving disability benefits. The first theory is that the use of the word "and" between "Wife" and "the minor child" somehow created a single entity for the benefit going to the "minor child." They argue that the parties intention was to confer a benefit to Amber and that Larraine was merely named as a guardian and/or custodial party for Amber Carpenter. Once the "minor child" reached the age of majority the life insurance obligation for both parties ceased to exist. However, there is no evidence that the mere use of the word "and" between the two named parties created a single entity, nor is there any evidence that the minor child was in fact the only intended beneficiary. Plain meaning and the ordinary usage of the word "and" does not give rise to the interpretation sought by Remaining Defendants. We find that the usage of the word "and" between "Wife" and "minor child" was merely a connector between individual entities.

The Agreement contains the term "minor child" in two other paragraphs:

> 6. <u>MEDICAL AND DENTAL EXPENSES</u>: In further consideration of the covenants and conditions contained herein, the Husband hereby agrees to maintain health insurance coverage fro the minor child, Amber Carpenter, and the Wife, Larraine Carpenter, through his employer, as long as the Husband is employed by I.S.G. Resources, Inc. The parties further agree to equally divide those medical, dental, eye care, orthodontic, and pharmaccutical [sic] expenses which are

6

>     not covered by insurance including, but not limited to the
>     deductibles on the child, Amber Carpenter, only; and
>
>     9. INCOME TAX DEDUCTION: The Husband hereby covenants and
>     agrees that the wife shall claim the minor child as a
>     deduction on her federal and state income tax returns.

(Doc. 28.)  The only other mention of Amber Carpenter is in the spousal support and visitation paragraph:

>     5. SPOUSAL SUPPORT AND VISITATION: The parties agree that
>     Husband will pay $200.00 per month as spousal support for
>     the benefit of Larraine Carpenter and Amber Carpenter. This
>     spousal support shall cease once Amber Carpenter reaches the
>     age of 18 years.
>          The parties further agree that the Husband shall have
>     liberal visitation with Amber Carpenter.
>          The Parties hereby covenant and agree to cooperate with
>     one another in exchanging health, medical, school, and any
>     other records concerning Amber Carpenter.

*Id.*

The term "minor child" in the Agreement clearly refers to Amber, as she is the only person mentioned in the Agreement, besides Larraine (wife) and the Decedent (husband), and she was a minor at the time of the Agreement. Where the term "minor child" is employed, that clause fails to state when the benefit/obligation ends. The term "minor child" in the three paragraphs of the Agreement has a plain and ordinary meaning of referring to the person named in a previous paragraph, Amber Carpenter. In a previous paragraph, the document specifically limited spousal support to continue until Amber reached her 18th birthday. Had the parties intended the same results regarding the life insurance benefits, the document could have done so in the life insurance paragraph.

7

To read the term "minor child" as a term in which would refer to Amber only prior to her reaching her 18th birthday would be contrary to other uses of the short-hand method to describe other parties in the Agreement, as well as require the Court to infer an intention of the parties outside of the plain and ordinary meaning given to the words. Both parties of the Agreement are referred to throughout the Agreement as "wife" and "husband". In order to adopt Remaining Defendants' interpretation of "minor child" and to give consistent meanings to the terms used in the Agreement, all benefits and obligations under the Agreement that use the neutral words "wife" and "husband" would terminate upon the parties' divorce, as they would no longer belong to the classifications "wife" and "husband". This outcome is clearly contrary to the parties intentions upon entering into the Agreement. Furthermore, it is not necessary to resort to an interpretation of the disputed term that would render the term ambiguous or confusing (as the interpretation Remaining Defendants seek).[1] We find nothing within the Agreement nor in any of the other documents that would require the Court to define the term "minor child" other than a term to describe a person in being, Amber Carpenter.

---

[1] Even if the Court did adopt the suggested interpretation, in all likelihood, the ambiguity and/or confusion would not have been held against the Plaintiffs as they were not the author of the agreement. *See* Larraine Affidavit, Doc. 26 (stating that she was not represented and that the Agreement was drafted by the Decedent's attorney).

AO72A
(Rev. 8/82)

We conclude the use of the term "minor child" in the Agreement is given the plain and ordinary meaning of the term "minor child", is merely a short-hand method of stating "Amber Carpenter." We further find that the life insurance provision containing the term "minor child" created an obligation for the Decedent to name both Larraine and Amber as beneficiaries of his life and accidental insurance. That obligation continued until a point in time in which he was no longer employed by I.S.G. Resources, Inc. The evidence before this Court is that the Decedent remained employed by I.S.G. Resources, Inc. until his death. Therefore, neither Larraine's nor Amber's rights to any insurance proceeds terminated upon Amber reaching her 18th birthday.[2] Additionally, we hold that the Agreement along with the divorce decree provide amble evidence that Amber was a third-party beneficiary of the Agreement. *See Orsini*, 639 S.W.2d 516.

Remaining Defendants also contend that the life insurance obligation terminated upon the purchase of I.S.G. Resources, Inc. by Headwaters, Inc. According to Headwaters, I.S.G. Resources, Inc. was purchased as a wholly owned subsidiary that continued to exist under the name, I.S.G. Resources, Inc.[3] (Exhibit "A", Doc. 26.) The

---

[2] While it is unclear on what day Amber Carpenter reached her 18th birthday, it is clear that she had attained her 18th birthday prior to the Decedent's death in October 2004. *See* Larraine's Affidavit, Doc. 28 (stating Amber was 15 years old at the time of the divorce, November 6, 2000).

[3] The Court was provided with a copy of a letter from Headwater, Inc. to Reliance. That letter stated that Headwaters, Inc. considered the Decedent an employee of I.S.G. Resources (stating that he was paid from I.S.G. Resources payroll account) and that Decedent continued to be employee of I.S.G Resources, Inc. until his death. (Exhibit "A", Doc. 26.)

9

AO72A
(Rev. 8/82)

Decedent continued to be paid by I.S.G. Resources, Inc. and was considered an employee of I.S.G. Resources, Inc. at his death. *Id.* We find that the Decedent's employer remained I.S.G. Resources, Inc., and the life insurance benefits of his employment remained relatively unchanged, regardless of who owned the company. There is nothing within the Agreement that would give rise to an interpretation that a change in ownership of the company would terminate the life insurance obligation.

Remaining Defendants also contend that the life insurance obligation terminated upon Decedent's collection of disability benefits in lieu of a check for actual time worked. They contend that the Decedent was no longer employed by I.S.G. Resources, Inc. when he began drawing disability benefits instead of a pay check for his work. This theory is undermined by the statement by I.S.G. Resources, Inc. that the Decedent remained employed by I.S.G. Resources, Inc. until his death. (Exhibit "A", Doc. 26.)

### III. CONCLUSION

Based on the foregoing, the Court concludes due to the Decedent's failure to comply with the life insurance provision of the Agreement, the Plaintiffs have established the necessity for a constructive trust. Therefore, the Court finds that Separate Defendants Sandra Carpenter, Linda Carpenter, and Rita Boyce's Motion for Summary Judgment should be and hereby is DENIED, and the Plaintiffs' Motion for Summary Judgment should be and hereby is GRANTED. A constructive

AO72A
(Rev. 8/82)

trust for Plaintiffs is imposed on the insurance proceeds deposited by Reliance into the Registry of this Court.  The Court further finds that Separate Defendant Reliance Standard Life Insurance Company's Motion for Summary Judgment is GRANTED and is hereby DISMISSED WITH PREJUDICE as a Defendant from this matter.

WHEREFORE, the Clerk of the Court is directed to pay Plaintiffs the $50,819.09 deposited in the Registry plus any interest that has accrued.  The monies in the Registry regarding this case will be split equally between the Plaintiffs.  All parties are to bear their own costs and fees.

IT IS SO ORDERED AND ADJUDGED this 26th day of January 2006.


    /S/ Robert T. Dawson
Robert T. Dawson
United States District Judge

**AO72A**
**(Rev. 8/82)**